STATE OF NORTH CAROLINA v. JOSEPH WENDELL JORDAN

No. COA98-137

(Filed 15 December 1998)

**Criminal Law— mistrial—denied—newspaper article during trial**

The trial court did not abuse its discretion by denying defendant's motion for a mistrial in a rape prosecution where defendant left the courtroom during a break in jury selection, telling his

─────────────────────────────────

attorney he was going to telephone his mother, and did not return; the judge proceeded and ultimately examined the jurors regarding defendant's absence; a newspaper article during the trial described defendant as a fugitive; the court conducted an inquiry and excused two of the seven jurors who had read the article; and defendant was subsequently apprehended and returned to the courtroom. The inquiry conducted by the court and its repeated admonition concerning the State's burden of proof were adequate to insure that no prejudice resulted to defendant from five of the remaining jurors having read the article, and, given the jurors' responses, the court was justified in concluding that they had not formed an opinion as a result of reading the article and that they were able to render a verdict based solely on the evidence.

Appeal by defendant from judgments entered 11 July 1997 by Judge Richard B. Allsbrook in Halifax County Superior Court. Heard in the Court of Appeals 16 November 1998.

*Attorney General Michael F. Easley, by Assistant Attorney General Virginia A. Gibbons, for the State.*

*Ronnie C. Reaves, P.A., by Lynn Pierce, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant Joseph Wendell Jordan was convicted of first-degree statutory rape and first-degree statutory sexual offense at the 11 July 1997 Criminal Session of Halifax County Superior Court. Defendant appeals his convictions on the ground that the trial court erred in denying his motion for a mistrial. For the reasons hereinafter stated, we find no error in the trial court's decision.

Jury selection in the trial of defendant began 8 July 1997. During a break in the proceedings, defendant left the courtroom after telling his attorney that he was going to telephone his mother. When the proceedings resumed later that afternoon, defendant did not return, but the trial court elected to proceed with the trial in defendant's absence. As the process of jury selection progressed, one of the prospective jurors asked defendant's attorney why defendant was not present in the courtroom, so the trial court interrupted the proceedings to address the matter of defendant's absence. In doing so, the court did not inform the jurors that defendant had fled. Instead, the court instructed the panel that the State bore the burden of proving

defendant's guilt beyond a reasonable doubt and further explained that defendant was presumed innocent and carried no burden of proof. The court then asked the selected and prospective jurors if they could disregard defendant's absence and render a fair and impartial verdict based solely upon the evidence. Each juror answered affirmatively.

Defendant remained at large throughout the jury selection process and the presentation of the State's case. The evidence for the State tended to show that the fourteen-year-old victim was drying off after taking a shower at a friend's house, when defendant, who had come to the house to use the telephone, forced open the bathroom door. Closing the door behind him, defendant removed the girl's towel, kissed her, performed oral sex on her, and then engaged in sexual intercourse with her. Dr. Ted Westover, the emergency room physician who treated the victim after the incident, testified that there were small fissures or tears in the victim's vulvar and perineal area. The State concluded its case on 9 July 1997.

That evening, an article describing defendant as a fugitive appeared on the front page of the local newspaper, "The Daily Herald," with a caption that read, "Defendant Walks Away." The article itself was not made a part of the record on appeal. However, the contents of the article, as summarized by defendant's attorney, appear in the transcript of the proceedings as follows:

> [The article] contains statements from the Halifax County Sheriff's Office that "Defendant Jordan was charged with two counts of rape of [sic] child and had been free on a $40,000 bond pending his trial. Fraser said that at 11:05 Tuesday morning, a morning recess was taken by the Court. When everyone returned at 11:25, Jordan's attorney, Sam Barnes, told the Court that his client had gone to use the phone and never returned. Fraser said at the time the resident superior court judge, Richard Allsbrook, issued two orders for arrest without bond on Jordan. However, the trial is proceeding in the absence of the accused, Fraser said. Jordan has relatives in Brooklyn, New York, and his current address is not known, Fraser said. He has been entered into a national crime information system as a wanted person, Fraser added."

Defendant's attorney brought the article to the court's attention on the morning of 10 July 1997 and requested that the court inquire as

to whether any of the jurors had read the article or were otherwise familiar with its contents. Upon discovering that seven jurors had read the article, the court reminded the jury of the State's burden on the issue of guilt and asked each of the seven jurors whether reading the article had impaired his or her ability to be fair and impartial. Two jurors stated that the article had affected their ability to render an impartial decision and were excused. Another juror, Laura Peterson, initially said that the article might affect her ability to be impartial but later stated that if defendant reappeared, she could be fair and impartial. The court did not excuse Peterson, because defendant had been apprehended and was expected to be present in the courtroom later that afternoon. Nonetheless, defendant's counsel moved for a mistrial on the ground that the article prejudiced defendant's right to a trial by a fair and impartial jury. The trial court denied the motion.

Defendant returned to the courtroom on the afternoon of 10 July 1997. The defense put on no evidence, and the jury found defendant guilty of first-degree statutory rape and first-degree statutory sexual offense. From the judgments entered on these convictions, defendant appeals.

Defendant's sole argument on appeal is that the trial court abused its discretion by denying defendant's motion for a mistrial. Defendant contends that the article's description of him as a fugitive caused the jurors who had read the article to believe that defendant had a guilty state of mind, and thus, rendered them unable to arrive at a fair and impartial verdict based upon the evidence. We are not persuaded by defendant's reasoning.

In pertinent part, section 15A-1061 of the North Carolina General Statutes states that "[t]he judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (1997). A mistrial is appropriate only where such gross improprieties exist that it is impossible for the defendant to receive a fair and impartial verdict under the law. *State v. Warren,* 327 N.C. 364, 376, 395 S.E.2d 116, 123 (1990). Whether to grant or deny a mistrial, pursuant to section 15A-1061, is a matter committed to the sound discretion of the trial court. *State v. Degree,* 114 N.C. App. 385, 391, 442 S.E.2d 323, 327 (1994). As such, the court's decision concerning a motion for a mistrial will not be reversed, unless the defendant shows that the deci-

sion amounted to a manifest abuse of discretion. *State v. Bonney*, 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991).

It is a fundamental principle of due process that a defendant is entitled to a fair and impartial panel of jurors. *State v. Rutherford*, 70 N.C. App. 674, 677, 320 S.E.2d 916, 919 (1984). To that end, the trial court is responsible for insuring that the jurors remain neutral and uninfluenced by external factors. *Id.* Whether outside forces have impaired a particular juror's ability to render an impartial decision is a discretionary determination for the trial court. *Id.* Unless the decision is clearly erroneous, this Court will not second-guess the trial court's judgment as to whether external influences have affected a juror's neutrality, since the trial court is in a better position to examine the jurors and observe their demeanor. *Id.*

In the instant case, upon learning that seven of the jurors had read the newspaper article describing defendant as a fugitive, the trial court questioned each juror individually to determine what, if any, impact the newspaper article had on the juror's ability to be impartial. Four of the seven jurors indicated that they could remain neutral, despite having read the article, and declared that they would render a verdict uninfluenced by defendant's absence or his status as a fugitive. Two of the jurors stated that having read the article, they could no longer be impartial; thus, they were excused. One juror, although initially expressing some doubt about her ability to be impartial after reading the article, later stated that she could render a fair and impartial decision if defendant reappeared at trial. The court did not excuse the juror, because defendant had been apprehended and was due to return to the proceedings.

From our review of the record, we are satisfied that the inquiry conducted by the trial court and its repeated admonition concerning the State's burden of proof were adequate to insure that no prejudice resulted to defendant from the fact that five of the jurors remaining on the panel had read the newspaper article. Given the jurors' responses, the court was justified in concluding that they had not formed an opinion as a result of reading the article and that they were able to render a verdict based solely on the evidence presented at trial. We, therefore, hold that the decision denying defendant's motion for a mistrial was an appropriate exercise of the trial court's discretion.

Defendant's remaining assignments of error are deemed abandoned, as defendant declined to address them in his brief. *See* N.C.R. App. P. 28(b)(5).

CATO v. CROWN FIN., LTD.

[131 N.C. App. 683 (1998)]

In light of the foregoing, we hold that defendant received a fair trial, free from prejudicial error.

No error.

Chief Judge EAGLES and Judge SMITH concur.